**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 12-0128 JB

MIGUEL BOLIVAR,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Motion for Substitution of Counsel and Memorandum in Support Thereof, filed May 29, 2012 (Doc. 182)("Motion"). The Court held hearings on June 15, and June 20, 2012. The primary issues are: (i) whether Defendant Miguel Bolivar's new counsel, Erlinda Johnson, has an actual or serious potential conflict of interest in this case; and (ii) if so, whether that conflict can be waived. The Court will grant the Motion. The Court finds that there is no conflict and that, even if Ms. Johnson has a conflict, the Waiver by Miguel Bolivar, filed June 20, 2012 (Doc. 206)("Bolivar Waiver"), and the Waiver by Eugenio Mendoza-Renteria, filed June 20, 2012 (Doc. 207)("Mendoza-Renteria Waiver"), satisfy any concerns that the Court might have.

**FACTUAL BACKGROUND**

On July 1, 2008, co-Defendant Eugenio Mendoza-Renteria was arrested for possessing with intent to distribute 5 kilograms and more of cocaine. See Motion at 3; United States v. Enran Rodriguez, CR 08-1667, Docket Text Entry, June 30, 2012 (Black, J.).[1] The federal court appointed

[1]The Indictment in that case indicates that Enran Rodriguez is also known as Eugenio Mendoza-Renteria. See United States v. Enran Rodriguez, CR 08-1667, Redacted Indictment, filed

Ms. Johnson to represent Mendoza-Renteria. See Motion at 4; United States v. Enran Rodriguez, CR 08-1667, CJA Appointment and Authority to Pay Court Appointed Counsel, filed July 1, 2008 (Doc. 6). On July 15, 2008, Mendoza-Renteria retained D. Chipman Venie to represent him and, on July 22, 2008, Ms. Johnson was terminated as counsel for Mendoza-Renteria. See Motion at 3-4; United States v. Enran Rodriguez, CR 08-1667, Entry of Appearance, filed July 15, 2008 (Doc. 16). On July 22, 2009, a federal grand jury returned a one-count indictment against Mendoza-Renteria, charging him with attempt to possess with intent to distribute cocaine. See Motion at 4; CR 08-167 Indictment at 1. After Mr. Venie was terminated as counsel on September 30, 2008, Ms. Johnson was reappointed to represent Mendoza-Renteria. See Motion at 4; United States v. Enran Rodriguez, CR 08-1667, Order, filed September 26, 2008 (Doc. 35); United States v. Enran Rodriguez, CR 08-1667, CJA Appointment and Authority to Pay Court Appointed Counsel, filed September 30, 2008 (Doc. 37). From October 1, 2008 to April 2009, Ms. Johnson prepared Mendoza-Renteria's case for trial and, on April 23, 2009, a jury found Mendoza-Renteria not guilty of attempting to possess with intent to distribute cocaine, but found him guilty of a misdemeanor offense. See Motion at 4; United States v. Enran Rodriguez, CR 08-1667, Verdict, filed April 23, 2009 (Doc. 109). On July 17, 2009, Mendoza-Renteria was sentenced to 364 days in custody and 1 year of supervised release, and Ms. Johnson's representation of Mendoza-Renteria terminated. See United States v. Enran Rodriguez, CR 08-1667, Judgment in a Criminal Case, filed June 23, 2009 (Doc. 119).

**PROCEDURAL BACKGROUND**

The arrests in this case stems from a multi-defendant indictment that a federal grand jury

---

July 22, 2008 (Doc. 21)("CR 08-1667 Indictment").

issued on January 24, 2012. See Redacted Indictment, filed January 24, 2012 (Doc. 2)("CR 12-0128 Indictment"). One of the individuals charged in the indictment is Mendoza-Renteria. See CR 12-0128 Indictment at 1. Another is Bolivar. See CR 12-0128 Indictment at 1. Bolivar represents that he and Mendoza-Renteria do not know each other. See Motion at 2.

On January 26, 2012, Bolivar and others were arrested for conspiracy to possess with the intent to distribute controlled substances, contrary to 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A) and (B), in violation of 21 U.S.C. § 846, and use of a telephone to facilitate a drug offense, in violation of 21 U.S.C. § 843. See Motion at 2; Docket Text Entry, filed January 26, 2012. On January 27, 2012, Bolivar appeared before a United States Magistrate Judge for an initial appearance. See Motion at 2; Clerk's Minutes, filed January 27, 2012 (Doc. 34). On February 1, 2012, Bolivar was arraigned on the indictment and released on his own recognizance. See Motion at 2; Clerk's Minutes of Arraignment/Detention, filed February 1, 2012 (Doc. 76). During that hearing, Troy Prichard represented Bolivar. See Motion at 2; Clerk's Minutes of Arraignment/Detention at 1. His entry of appearance, however, does not appear on the Court's docket until February 13, 2012. See Motion at 2; Entry of Appearance, filed February 13, 2012 (Doc. 119). Roberto Albertorio was appointed to represent Mendoza-Renteria. See Motion at 4; CJA Appointment of and Authority to Pay Court Appointed Counsel, filed January 30, 2012 (Doc. 58).

On March 21, 2012, the Court held a status conference at which all defense attorneys and all defendants, with the exception of Bolivar and the fugitive defendants, were present. See Clerk's Minutes, filed March 21, 2012 (Doc. 168). On March 27, 2012, the Court held a hearing to show cause why it should not hold Bolivar in contempt for failing to appear at a March 21, 2012, hearing. See Motion at 2; Notice of Show Cause Hearing, filed March 22, 2012 (Doc. 165). At the hearing, Bolivar explained that Mr. Prichard had not informed him that his attendance was mandatory or

when the March 21, 2012 hearing was to begin. See Transcript of Hearing at 3:12-16 (March 27, 2012)(Bolivar)("March 27, 2012 Tr.").[2] Mr. Prichard represented that there was a miscommunication, but that he had informed Bolivar about the hearing. See March 27, 2012 Tr. at 3:17-21 (Prichard). Mr. Prichard admitted, however, that he did not call Bolivar the night before the hearing to remind him about the hearing. See March 27, 2012 Tr. at 3:21-22 (Prichard). The Court explained that, if Mr. Prichard was unsure whether his client needed to appear, he needed to consult the Court's Courtroom Deputy or assume that Bolivar's presence was required. See March 27, 2012 Tr. at 4:21-5:3 (Court). Unsatisfied with Mr. Prichard's representation, in April 2012, Bolivar contacted Ms. Johnson about representing him in this case. See Motion at 2. Bolivar represents that, on May 18, 2012, he delivered a letter to Mr. Prichard requesting his immediate withdrawal as his counsel and, at that time, Bolivar terminated Mr. Prichard's services. See Motion at 2. On May 24, 2012, Bolivar retained Ms. Johnson as his counsel of choice. See Motion at 3. Bolivar represents that Mr. Prichard has no position on the substitution of counsel. See Motion at 1. Bolivar represents that Ms. Johnson and Assistant United States Attorney Reeve Swainston had been in contact regarding substitution of counsel, and that Mr. Swainston "advised that he objects to this motion to substitute counsel, citing conflict of interest due to undersigned counsel's previous representation of co-defendant Eugenio Mendoza-Renteria in a 2008 unrelated case." Motion at 1.

On May 29, 2012, Bolivar filed his Motion. See Doc. 182. Bolivar asserts that Plaintiff United States of America is unable to demonstrate that Ms. Johnson would be laboring under a conflict of interest in her representation of Bolivar. See Motion at 5. He argues that the Sixth Amended to the United States Constitution guarantees him the right to be represented by counsel

[2]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

of his choice, and that a defendant is deprived of that right when he is prevented from obtaining the counsel of his choosing.  See Motion at 5 (citing United States v. Gonzales-Lopez, 548 U.S. 140 (2006)).  He contends that, for an attorney to be disqualified based on a conflict of interest, it must be shown that the attorney "actively represented conflicting interests and that an actual conflict of interest adversely affected the lawyer's performance." Motion at 5 (citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)).  Bolivar points to the American Bar Association's Model Rules of Professional Conduct, which provide: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Motion at 6 (quoting Model Rules of Prof'l Conduct R. 1.9(a)).  He asserts that a matter is substantially related if: "(1) [t]he current matter involved the work the lawyer performed for the former client; or (2) [t]here is substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has been generally known."  Motion at 6-7 (quoting Restatement (Third) of the Law Governing Lawyers, § 132 cmt. e (2000)).  He argues that there is "absolutely no evidence that [Ms. Johnson's] prior representation of Mr. Mendoza in an unrelated and closed matter would create a conflict in [Ms. Johnson's] representation of Mr. Bolivar in the above captioned case."  Motion at 7.  He suggests that, to demonstrate an actual conflict of interest, the United States must point to "specific instances which suggest an impairment or compromise of one client's interests for the benefit of another party."  Motion at 8 (citing Danner v. United States, 820 F.2d 1166, 1169 (11th Cir. 1987)).  Bolivar asserts that any perceived conflicts related to Ms. Johnson's representation are speculative and that, even if the United States establishes a possible conflict, he is entitled to show that "there is good cause to believe that no conflict of interest is likely

to arise."  Motion at 8 (quoting Fed.R.Crim.P. 44(c)(2)).  He contends that, here, there is no information that indicates that he and Mendoza-Renteria have conflicting adverse interests.  See Motion at 9.

Bolivar further asserts that the potential for conflict is not sufficient to disqualify a defendant's choice of counsel.  See Motion at 9 (citing Matter of Special February 1977 Grand Jury, 581 F.2d 1262, 1264-65 (7th Cir. 1978)).  He argues that "[a] mere belief or fact that a co-defendant, represented by defendant's counsel, may have testified at defendant's trial does not indicate a conflict."  Motion at 9 (citing United States v. Medina-Hernandez, 606 F.2d 770 (7th Cir. 1979)).  He contends that the United States Court of Appeals for the Tenth Circuit has "rejected disqualification of defense counsel in cases involving facts where the former client and the current client know each other and the current client blamed the former client for inducing him into committing the current offense."  Motion at 10 (citing United States v. Soto-Hernandez, 849 F.2d 1325, 1329 (10th Cir. 1988)).  He reiterates that he does not know Mendoza-Renteria and that neither is implicating the other.  See Motion at 10.  He emphasizes that there is no evidence that Ms. Johnson's representation of him contravenes Mendoza-Renteria's interests.  See Motion at 11.  Bolivar argues that the Court must examine the conflict picture "as it exists at this time" and that the Court "should not speculate on every theoretical development that could possibly occur."  Motion at 11 (emphasis in original)(citing United States v. Trujillo, 302 F.Supp.2d 1239, 1248 (D.Kan. 2004)).  He asserts that the mere possibility that a former client who is a co-defendant may decide to cooperate does not create an actual or serious, potential conflict and does not justify disqualifying the defendant's counsel of choice.  See Motion at 11 (citing United States v. Turner, 594 F.3d 946, 953 (7th Cir. 2010)).  He points out that, even when one client may be cross-examined about another client and that client's case, defendants may knowingly and intelligently waive their

right to conflict-free representation.  See Motion at 13 (citing United States v. Perez, 325 F.3d 115, 128-29 (2d Cir. 2003)).

On June 12, 2012, the United States filed the United States' Response to Defendant's Motion for Substitution of Counsel.  See Doc. 198 ("Response").  The United States points to language from the Supreme Court of the United States stating:

> [A] district court must pass on the issue of whether or not to allow a waiver of conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly.  The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

Response at 1 (quoting Wheat v. United States, 486 U.S. 153, 162-63 (1988)).  It asserts that, even though Mendoza-Renteria's previous case and the current case are not related, Mendoza-Renteria and Bolivar may face adversarial positions in this already complex litigation matter.  See Response at 2.  It states that it does not "per se object" to the Motion, but notes that it is concerned about a possible conflict.  Response at 2 (emphasis in original).  The United States represents that Ms. Johnson may have conflicting loyalties, and that the Court should require that Mendoza-Renteria and Bolivar fully and completely understand the circumstances of the substitution in addition to signing a waiver of the conflict.  See Response at 2.  It points to the Court's obligation to investigate potential conflicts under rule 44(c) of the Federal Rules of Criminal Procedure and notes that a "trial court could likely face later challenges of error if it allows a real or perceived conflict to persist." Response at 4.  It argues that,

> while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

Response at 5-6 (quoting Wheat v. United States, 486 U.S. at 159).  It asserts that rule 44(c)

provides that the Court should act as the protector of a defendant's right to constitutionally effective, conflict free, counsel, "[u]nless there is good cause to believe that no conflict of interest is likely to arise." Response at 6 (citing Fed. R. Civ. P. 44(c)). The United States contends that, under the New Mexico Rules of Professional Conduct -- which the United States District Court for the District of New Mexico has adopted, an attorney "should not represent a client whose interests are adverse to those of a present client, or whose interests are adverse to those of a former client on a matter that is the same or substantially related to the previous matter." Response at 7 (citing In the Matter of Stein, 143 N.M. 462, 468, 177 P.3d 513, 519 (2008)).

The United States argues that Ms. Johnson owes a duty of loyalty both to Mendoza-Renteria and to Bolivar. See Response at 8. It stresses the need to "peer into the future" and that "the potential for conflict is very real." Response at 8. The United States hypothesizes that

> Renteria may decide to cooperate and testify against co-defendants. Renteria may decide not to cooperate, but still testify in a manner that specifically targets others in this case to make himself look less culpable, or not culpable at all, while making others look more culpable. Renteria may advance a legal strategy that foregoes testimony all together, but such a strategy may require focused, yet divergent legal strategies from the other defendants in this case, including Bolivar, in order to better defend themselves against the charges in this case.
>
> If Renteria decides to testify, whether as a government witness or on his own in his own defense, he may testify to matters that cannot be predicted at this stage of the prosecution, but could be damaging to other defendants including Bolivar whether they know each other or not. Most problematic, is that Renteria could testify to facts and circumstances or information, in his own defense or otherwise, that only he and Ms. Johnson could know are truthful or not. Such a scenario would place other defendants in this case, and their counsel, at a disadvantage as well because only Ms. Johnson is in a position to attack her former client with confidential, attorney-client privileged information she may have learned as his former counsel.
>
> This is where the "what ifs" live in the back of a lawyers mind. What if Renteria testifies about something (really anything) that Ms. Johnson in her capacity as his former counsel knows, or reasonably believes, is simply not true. If the testimony is not a matter of public record, but instead information she learned as

> Renteria's counsel, would Ms. Johnson be an effective representative of Bolivar if she did not take advantage of such an opportunity to attack the credibility of Renteria with such attorney-client privileged information? What if Renteria admitted to certain things during their relationship and then testifies completely inconsistent with such testimony? Such opportunities to aggressively impeach a witness with information a lawyer knows will be destructive to an adversarial witness are more rare than most would presume, yet Ms. Johnson may not be in a position to mount such an attack due to her loyalties to Renteria.

Response at 8-9. The United States suggests various scenarios in which Ms. Johnson's representation impinges on her obligations either to Mendoza-Renteria or to Bolivar. See Response at 10-11. It stresses that the Court, and the parties, have an interest "in advancing a process where criminal judgments are and 'remain intact on appeal.'" Response at 11. It argues that, to effect a valid waiver, the Tenth Circuit requires that the trial judge affirmatively participate in the waiver decision "by eliciting a statement in narrative from . . . the defendant indicating that he fully understands the nature of the situation and intelligently made the decision to proceed with the challenged counsel." Response at 11 (citing United States v. Winkle, 722 F.2d 605, 611 (10th Cir. 1983)). It concedes that there is a presumption in favor of chosen counsel, but asserts that "the presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Response at 12 (citing United States v. Vasquez, 995 F.2d 40, 41-42 (5th Cir. 1993)). The United States reiterates, in conclusion, that it takes no specific position on the Motion, but states that there is need for the Court to carefully and thoroughly analyze the issues presented. See Response at 12.

On June 13, 2012, Bolivar filed his Amended Reply to Government's Response to Defendant Miguel Bolivar's Motion to Substitute Counsel. See Doc. 200 ("Reply").[3] Bolivar argues that he

[3]The only difference between the Reply and the Reply to Government's Response to Defendant Miguel Bolivar's Motion to Substitute Counsel, filed June 13, 2012 (Doc. 199), is that the Reply corrects a grammatical error. See Reply at 1 n.1.

"enjoys a rebuttable presumption in favor of counsel of choice." Reply at 1 (citing Wheat v. United States, 486 U.S. at 164). He asserts that the proper conflict analysis "is not based on 'joint representation' but rather on potential conflicts resulting from successive representation." Reply at 2 (citing Moss v. United States, 323 F.3d 445, 459 (6th Cir. 2003). He states that, "[t]ypically, in a successive representation case, the 'fear' is that an actual conflict will adversely affect trial counsel's performance because 'the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing confidential information.'" Reply at 2 (quoting United States v. Cordell, 193 F.App'x 479, 482 (6th Cir. 2006)(unpublished)). Bolivar contends that, in a successive representation case, "mere proof that a criminal defendant's counsel previously represented a witness is insufficient to establish" a conflict. Reply at 2 (citing Smith v. White, 815 F.2d 1401, 1405 (11th Cir. 1987)). He argues that, to establish an actual conflict of interest, the United States must show: (i) that the attorney's "earlier representation of the witness was substantially and particularly related to counsel's later representation of the defendant"; or (ii) that the attorney "actually learned particular, confidential information during the prior representation of the witness that was relevant to defendant's later case." Reply at 2-3 (citing Smith v. White, 815 F.2d at 1405; Enoch v. Gramley, 70 F.3d 1490 (7th Cir. 1995); Church v. Sullivan, 942 F.2d 1501, 1511 n.8 (10th Cir. 1991)). Bolivar asserts that, as a general rule, courts do not disqualify an attorney based on a conflict of interest unless the former client moves for disqualification. See Reply at 4 (citing Stalnaker v. DLC, Ltd., 376 F.3d 819 (8th Cir. 2004)). He contends that the current matter and the previous case in which Ms. Johnson represented Mendoza-Renteria are unrelated. See Reply at 4. He further asserts that Mendoza-Renteria, whom Mr. Albertorio represents, does not oppose the Motion and is willing to execute a waiver. See Reply at 5.

On June 15, 2012, the Court held a hearing. Present at the hearing were Ms. Johnson, Mr.

Prichard, Bolivar, and the United States. See Clerk's Minutes at 1, filed June 15, 2012 (Doc. 204). At the hearing, the Court suggested that, in its prior practice as a lawyer, it would have the current client and the prior client submit waivers of conflict to ensure that all the parties were fully informed. See Transcript of Hearing at 3:1-10 (June 15, 2012)(Court)("June 15, 2012 Tr."). Bolivar asserted that the case law establishes that the United States must meet a heavy burden to establish a conflict before waivers are necessary. See June 15, 2012 Tr. at 3:11-14 (Johnson). He pointed to United States v. Turner, in which the United States Court of Appeals for the Seventh Circuit reversed a district court's disqualification of counsel based on hypotheticals. See June 15, 2012 Tr. at 4:21-5:22 (Johnson). He stressed that this case is a successive representation case and that Ms. Johnson is no longer beholden to Mendoza-Renteria. See June 15, 2012 Tr. at 5:22-6:6 (Johnson). He argued that the many scenarios offered by the United States are no more than speculation, which is insufficient to establish a conflict, but that he had no objection to proceeding to waivers. See June 15, 2012 Tr. at 6:7-6:20 (Johnson). Bolivar emphasized that it is the United States' burden to establish that Ms. Johnson learned something in her representation of Mendoza-Renteria that she could use against Mendoza-Renteria in her representation of Bolivar. See June 15, 2012 Tr. at 8:11-9:1 (Johnson). Ms. Johnson represented to the Court that she did not have that kind of information and that a court may reasonably rely on that representation. See June 15, 2012 Tr. at 9:1-9 (Johnson).

Mr. Prichard then addressed the Court, to which Ms. Johnson objected. See June 15, 2012 Tr. at 10:4-15 (Court, Prichard, Johnson). The Court allowed Mr. Prichard to speak, however, because he remains counsel of record, and because he might help Bolivar make an informed decision whether to waive any conflict. Mr. Prichard stated that he believes there is a great potential for conflict. See June 15, 2012 Tr. at 10:17-11:2 (Prichard). He asserted that the United States'

argument was persuasive, and that he believed Mendoza-Renteria and his counsel should be present at the hearing to express their views on the Motion. See June 15, 2012 Tr. at 12:24-13:4 (Prichard). When the Court asked Mr. Prichard what his specific concerns were, he emphasized that page 9 of the Response captured the universe of his concerns regarding the potential for conflict. See June 15, 2012 Tr. at 14:8-12 (Prichard).

The United States asserted that it was not moving to preclude Ms. Johnson's representation, but that it believed that the Court should be aware of these circumstances. See June 15, 2012 Tr. at 16:10-17 (Swainston). It argued that it did not have enough information to know how concerned it should be or about what it should be concerned. See June 15, 2012 Tr. at 16:22-23 (Swainston). The United States suggested that it might be best to continue the hearing until Mendoza-Renteria could be present, because he also has an interest in the proceeding. See June 15, 2012 Tr. at 17:16-25 (Swainston). The United States also asserted that, given Mendoza-Renteria's May 7, 2012 letter to the Court,[4] it was concerned whether Mr. Albertorio would remain as counsel for Mendoza-Renteria. See June 15, 2012 Tr. at 18:1-9 (Swainston). It contended that, although Ms. Johnson may not remember anything that might help her cross-examine Mendoza-Renteria, she may later

---

[4]On May 7, 2012, Mendoza-Renteria wrote the Court stating:

> Mr. Albertorio has had very little communication with me and each time that I have tried to contact him, my calls were unanswered. I have been advised that he is no longer with the Public Defenders Office. No one from the Public Defenders Office has helped me with information on my case . . . Is there any way you could help me find out why my case has not moved forward.

Doc. 181 ("Mendoza-Renteria Letter"). After the Court read the Mendoza-Renteria Letter, it asked its Courtroom Deputy Clerk, K'Aun Wild, to call Mr. Albertorio and have him go see his client. Mr. Albertorio informed Ms. Wild that the United States had been delivering a lot of discovery to each of the Defendants' counsel and that there was nothing to report at this stage to Mendoza-Renteria. He agreed, however, to go see Mendoza-Renteria.

remember certain information, in particular information concerning whether he is a United States citizen -- a fact in dispute.  See Tr. at 20:4-13 (Swainston).  It argued that there is a real possibility that Ms. Johnson's representation would involve adverse interests and pointed to United States v. Suarez, 283 F.3d 76 (2d Cir. 2002).  See June 15, 2012 Tr. at 20:19-21:8 (Swainston).  The United States emphasized that there are two possible conflicts: (i) Ms. Johnson has obligations to her former client that could interfere with her representation of Bolivar; and (ii) she has obligations to Bolivar that she may not fulfill to avoid violating her duties to Mendoza-Renteria.  See June 15, 2012 Tr. at 24:20-25:4 (Swainston).

The Court asked Bolivar about continuing the hearing so that Mr. Albertorio and Mendoza-Renteria could be present.  See June 15, 2012 Tr. at 28:20-25 (Court). Bolivar objected, because the United States had not met its burden of establishing a conflict and because the case was not at the point where waivers were necessary.  See June 15, 2012 Tr. at 29:1-31:4 (Johnson).  The Court stated that it was concerned that Mendoza-Renteria was not present and held that it would continue the hearing to allow him to be present.  See June 15, 2012 Tr. at 33:10-17 (Court).

On June 18, 2012, the United States filed the United States' Notice of Supplemental Authority.  See Doc. 205 ("Supplemental Authority").  The United States cites several district court cases in support of its argument that the Court should: (i) "determine whether there is an actual conflict of interest or a serious potential for a conflict of interest concerning Mrs. Johnson's proposed representation of defendant Miguel Bolivar"; and (ii) if the Court answers in the affirmative, whether a waiver of the conflict is both permissible and appropriate.  Supplemental Authority at 1 (citing United States v. Kolodesh, No. 11-464, 2012 WL 1156334, at *3 (E.D. Pa. Apr. 5, 2012)(Robreno, J.); United States v. Massimino, 832 F.Supp.2d 510, 515 (E.D. Pa. 2011)(Robreno, J.)).  The United States further asserts that there is no requirement that the Court

"first find an actual conflict," because a "serious potential for a conflict of interest is enough to require this Court's careful consideration of Bolivar's request for his attorney of choice in this matter." Supplemental Authority at 1 (citing Wheat v. United States, 486 U.S. at 159).

On June 20, 2012, Bolivar submitted the Waiver by Miguel Bolivar. See Doc. 206 ("Bolivar Waiver"). Bolivar recites the facts regarding Ms. Johnson's representation of Mendoza-Renteria and his retention of Ms. Johnson. See Bolivar Waiver ¶¶ 1-7, at 1. He states:

> 8. Ms. Johnson is my counsel of choice.
>
> 9. I have been advised that I have the right to counsel of my own choice.
>
> 10. By signing this document I acknowledge that I have been apprised of all the facts surrounding my counsel and her prior representation of Eugenio Mendoza-Renteria.
>
> 11. Understanding all the foregoing facts, I hereby advise the Court that Ms. Johnson is my counsel of choice and wish for her to continue her representation of me in the above captioned case and I hereby waive any conflict of interest.

Bolivar Waiver ¶¶ 8-11, at 1-2. Bolivar also filed Mendoza-Renteria's waiver of any conflict. See Waiver by Eugenio Mendoza-Renteria, filed June 20, 2012 (Doc. 207)("Mendoza-Renteria Waiver"). Mendoza-Renteria similarly recounts the facts surrounding Ms. Johnson's representation of him. See Mendoza-Renteria Waiver ¶¶ 1-9, at 2. He states

> 11. I understand that co-defendant Miguel Bolivar has retained Ms. Johnson to represent him in this case.
>
> 12. I understand that if I choose to testify at trial and I am tried jointly with Mr. Bolivar, Ms. Johnson will have to cross-examine me. Knowing that I hereby waive any conflict of interest and privileges.
>
> 13. I do not object to Ms. Johnson's representation of Mr. Bolivar.
>
> 14. Understanding all the foregoing facts, I hereby advise the Court that Ms. Johnson will be representing Mr. Bolivar in the same case in which I am currently charged and I hereby waive any conflict of interest.

See Mendoza-Renteria Waiver ¶¶ 11-14, at 2.

On June 20, 2012, the Court held a second hearing on the Motion. Given the United States' concerns at the previous hearing, the Court asked Mr. Albertorio the status of his relationship with Mendoza-Renteria. See Transcript of Hearing at 3:18-25 (June 20, 2012)(Court)("June 20, 2012 Tr."). Mr. Albertorio responded that he had met with his client several times and that there are no current issues concerning his representation of Mendoza-Renteria. See June 20, 2012 Tr. at 4:1-5 (Albertorio). The Court then asked whether Mendoza-Renteria had any objection to Ms. Johnson representing Bolivar. See June 20, 2012 Tr. at 4:10-11 (Court). Mendoza-Renteria asserted that he has no objection and that he has executed a waiver. See June 20, 2012 Tr. at 4:12-21 (Albertorio). He stated that Ms. Johnson represented him four years ago, that he has talked with Mr. Albertorio, and that they see nothing, at this time, which could result in a conflict. See June 20, 2012 Tr. at 5:5-12 (Albertorio).

Bolivar noted that the materials which the United States submitted provide somewhat of a framework for conflicts, but asserted that they are factually distinguishable from his case, because, in those cases, a conflict had already been established. See June 20, 2012 Tr. at 7:17-25 (Johnson). He argued that the cases provided by the United States make clear that: (i) the United States bears the burden of establishing that there is an actual conflict or the serious potential for a conflict; and (ii) if the United States meets that burden, then the Court must determine whether a waiver would address the conflict. See June 20, 2012 Tr. at 7:25-8:11 (Johnson). He also pointed the Court to United States v. Agosto, 675 F.2d 965 (8th Cir. 1982), overruled on other grounds by Flanagan v. United States, 465 U.S. 259 (1984), in which the United States Court of Appeals for the Eighth Circuit held that, if the district court finds that there are potential conflicts, the court may accept waivers. See June 20, 2012 Tr. at 8:23-9:19 (Johnson). He provided the Court with the waivers for

Mendoza-Renteria and himself.  See June 20, 2012 Tr. at 9:20-22 (Johnson).  The Court then asked, looking to Supplemental Authority, for Bolivar's view on the holdings of the Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, that an attorney is conclusively presumed to have received privileged information during his representation of a former client.  See June 20, 2012 Tr. at 10:4-16 (Court).  Bolivar responded that, in United States v. Massimino, by the time he made his holdings, Judge Robreno had already established that there was a conflict, because the former client was already a government witness.  See June 20, 2012 Tr. at 11:11-16 (Johnson).  He argued that the Eighth Circuit has held that a district court should not disqualify counsel of choice merely because it is presumed that counsel received privileged information from a former client.  See June 20, 2012 Tr. at 12:1-7 (Johnson).

Mr. Prichard stated that United States' Response is persuasive and that there may be a serious potential conflict.  See June 20, 2012 Tr. at 13:21-14:11 (Prichard).  Mendoza-Renteria reiterated that he does not believe there is a conflict, but noted that he did not know who would testify at this juncture.  See June 20, 2012 Tr. at 14:15-22 (Albertorio).  The United States represented that it provided the Supplemental Authority to give the Court some guidance how other district courts have handled this analysis.  See June 20, 2012 Tr. at 16:2-12 (Swainston).  It stated that its argument remained largely the same, but asserted that the waivers likely resolved any conflict.  See June 20, 2012 Tr. at 16:13-16 (Swainston).  The United States emphasized that it does not seek to disqualify Ms. Johnson, but argued that it viewed its burden as no more than the ethical obligation to bring the matter before the Court.  See June 20, 2012 Tr. at 17:17-24 (Swainston).  It asserted that it was still concerned that, down the road, a conflict could arise, and that, if the burden is on the United States, its burden has been met.  See June 20, 2012 Tr. at 17:24-18:10 (Swainston).  Mendoza-Renteria then confirmed that he was not looking for other counsel and that he was satisfied

with Mr. Albertorio's representation. See June 20, 2012 Tr. at 20:19-21:9 (Court, Mendoza-Renteria). Bolivar also noted that independent counsel, Scott Davidson, reviewed the Bolivar Waiver with him to make sure that he understood the rights that he was waiving. See June 20, 2012 Tr. at 25:18-25 (Johnson).

After the hearing, Bolivar submitted several notices containing the position of other defense counsel regarding the Motion. See Notice of Position of Other Defense Counsel as to Defendant Miguel Bolivar's Motion to Substitute Counsel (Doc. 182), filed June 22, 2012 (Doc. 212); Amended Notice of Position of Other Defense Counsel as to Defendant Miguel Bolivar's Motion to Substitute Counsel (Doc. 182), filed June 27, 2012 (Doc. 216); Second Amended Notice of Position of Other Defense Counsel as to Defendant Miguel Bolivar's Motion to Substitute Counsel (Doc. 182), filed July 1, 2012 (Doc. 218)("Position of Other Defense Counsel"). Bolivar represents that counsel for the following co-Defendants have indicated that they do not believe that Ms. Johnson's representation creates a conflict or potential conflict, and do not object to the Motion: (i) Homero Varela; (ii) Steve Chavez; (iii) Benito Castillo-Nava; (iv) Ramon Gonzalez, Jr.; (v) Ramon Gonzalez, Sr.; (vi) Adalberto Valenzuela-Flores; (vii) Gabriel Guerra-Gonzales; (viii) Antonio Munoz-Hernandez; (ix) Andres Gonzales; (x) Jesus Ramos-Castillo; and (xi) Roy Madrid. See Position of Other Defense Counsel at 1-3. Accordingly, every co-Defendant, except for those who are fugitives, Manuel Villa-Mayorquin and Procoro Noberto Alvarez, has stated that they do not object to the Motion.

**LAW REGARDING THE SIXTH AMENDMENT AND ATTORNEY CONFLICTS**

The "essential aim" of the Sixth Amendment "is to guarantee an effective advocate for each criminal defendant." Wheat v. United States, 486 U.S. at 159. Derivative of the right to counsel is a defendant's right to representation by the counsel of his choice. See United States v. Gonzalez-

Lopez, 548 U.S. 140, 144 (2006).  "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."  Wood v. Georgia, 450 U.S. 261, 271 (1981).  "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant."  Wheat v. United States, 486 U.S. at 159.  The Supreme Court has noted that, in joint-representation cases, the danger is "in what the advocate finds himself compelled to refrain from doing."  Holloway v. Arkansas, 435 U.S. 475, 488 (1978) (emphasis in original).  The Tenth Circuit has held that the same conflict principles apply to successive-representation cases.  See United States v. Winkle, 722 F.2d at 610 ("These principles concerning conflicts of interest are not restricted to cases of joint representation of co-defendants at a single trial.").  Many of the cases in the Tenth Circuit discussing attorney conflicts of interest do so from the habeas perspective and do not set forth the standards by which a district court should determine whether a conflict exists at an earlier stage of the proceeding.  Appellate courts must afford a district court's decision to disqualify counsel "broad latitude."  United States v. Evanson, 584 F.3d 904, 911 (10th Cir. 2009).

The first step in the conflict analysis is to determine whether there is a conflict of interest or the serious potential for a conflict of interest.  Where the government is aware of a conflict of interest, it "has a duty to bring it to the court's attention and, if warranted, move for disqualification."  United States v. Migliaccio, 34 F.3d 1517, 1528 (10th Cir. 1994).  The Supreme Court has acknowledged that the Sixth Amendment requires that district courts "recognize a presumption in favor of [the defendant's] counsel of choice, . . . [but] that presumption may be overcome not only by a demonstration of an actual conflict but by a showing of a serious potential for conflict."  Wheat v. United States, 486 U.S. at 164.  "An actual conflict exists when defense

counsel is compelled to comprise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." Perillo v. Johnson, 205 F.3d 775, 781 (5th Cir. 2000). "[A]n attorney has a potential conflict of interest if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." United States v. Perez, 325 F.3d at 125. In United States v. Bowie, 892 F.2d 1494 (10th Cir. 1990), the Tenth Circuit found that "the potential for conflict is great" in a successive-representation case "where there is a substantial relationship between the cases." 892 F.2d at 1502. The Tenth Circuit also stated that there is "no per se rule prohibiting representation of the defendant by counsel who has previously represented a government witness in a related case." United States v. Bowie, 892 F.2d at 1502. The United States District Court for the District of Kansas has held that it is

> appropriate to assume initially that the defendant's choice of counsel is proper unless the government can lay a foundation showing good cause to believe that there is either already an actual conflict of interest interfering with the ability of counsel to provide effective assistance, or a probability that such a conflict will develop in the case.

United States v. Trujillo, 302 F.Supp.2d at 1247-48. In determining whether the United States has met this burden, the trial court must balance "a defendant's Sixth Amendment right to counsel of choice against the interests of the proper and fair administration of justice." United States v. Kolodesh, 2012 WL 1156334, at *4 (citing United States v. Voigt, 89 F.3d 1050, 1074 (3d Cir. 1999)). The Seventh Circuit has held that, before disqualifying counsel based on a potential conflict, the district court should "evaluate (1) the likelihood the conflict will actually occur; (2) the severity of the threat to counsel's effectiveness; and (3) whether there are alternative measures available other than disqualification." United States v. Turner, 594 F.3d 946, 952 (7th Cir. 2010).

If a conflict is present, a defendant may waive the conflict. See Peretz v. United States, 501

U.S. 923, 936 (1991)("The most basic rights of criminal defendants are . . . subject to waiver."); United States v. Hunt, 62 F.App'x 272, 276 (10th Cir. 2003)(unpublished)("Nevertheless, a defendant may knowingly and intelligently waive the right to conflict-free counsel."). "[A] district court should affirmatively participate in a defendant's waiver decision . . . to determine if he knowingly and intelligently made the decision to continue with conflicted counsel." United States v. Hunt, 62 F.App'x at 275. The Tenth Circuit has held that, to effect a valid waiver, a trial court should "affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel." United States v. Winkle, 722 F.2d at 611 (citations omitted). A district court "should also determine whether the defendant understands the facts underlying the conflict and the dangers and risks associated with waiving the conflict." United States v. Hunt, 62 F.App'x at 276 (citing Eden v. Hannigan, 87 F.3d 1109, 1118 (10th Cir. 1996)). Where a colloquy does not reflect that the defendant understood those risks and knowingly and intelligently waived the conflict, the Tenth Circuit has held that there is a Sixth Amendment violation where the conflict adversely effect counsel's performance. See Eden v. Hannigan, 87 F.3d at 1112, 1118. The district court is "allowed substantial latitude in refusing waivers of conflicts of interest." Wheat v. United States, 486 U.S. at 163. The United States Court of Appeals for the First Circuit has held that the "government bears a 'heavy burden' in demonstrating that disqualification is justified" and that "disqualification of . . . counsel should be a measure of last resort." In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988).

**ANALYSIS**

The Court will grant the Motion. There is no actual conflict of interest in this case, and any potential conflict is too speculative to support disqualifying Ms. Johnson. Furthermore, Mendoza-

Renteria and Bolivar have waived any conflict. All other available co-Defendants have also informed the Court that they do not object to Ms. Johnson representing Bolivar.

## I. MS. JOHNSON'S REPRESENTATION OF BOLIVAR DOES NOT CREATE AN ACTUAL OR SERIOUS POTENTIAL CONFLICT OF INTEREST.

The United States does not seek to disqualify Ms. Johnson as counsel. See June 20, 2012 Tr. at 17:17-24 (Swainston). It argues that it has, however, satisfied its burden to establish that there is a conflict, because it has established that Ms. Johnson has previously represented Mendoza-Renteria, Bolivar's co-Defendant, and that, if Ms. Johnson continues to represent Bolivar, she may be forced to cross-examine Mendoza-Renteria. See June 20, 2012 Tr. at 17:24-18:10 (Swainston).

In United States v. Lanoue, 137 F.3d 656 (1st Cir. 1998), the First Circuit described a case at what it considered the "outer limits" of a potential conflict, and affirmed the district court's decision to disqualify counsel. 137 F.3d at 664. There, the attorney had represented a co-defendant during an earlier trial on related charges, and the United States asserted that it might call the co-defendant as a witness to testify whether the defendant possessed a firearm at any time during the events for which they were both arrested. See United States v. Lanoue, 137 F.3d at 663. The First Circuit noted that the "government offered no reason, other than the possibility that [the co-defendant] might have known of the firearm, for calling him as a witness." United States v. Lanoue, 137 F.3d at 663. Those circumstances provide a much stronger basis for finding a potential conflict than the circumstances before the Court. Ms. Johnson's representation of Mendoza-Renteria terminated three years ago, and the subject of her representation was criminal charges unrelated to the charges in this case. The United States can only speculate whether Mendoza-Renteria would testify at trial. That the cases are unrelated provides a strong basis for determining that any potential conflict is not so serious as to require disqualification. See United States v. Bowie, 892 F.2d at 1502

(noting that "the potential for conflict is great" in a successive-representation case "where there is a substantial relationship between the cases").  The hypothetical scenarios that the United States presents establish the possibility of a conflict, but not the probability.  See Response at 9 ("This is where the 'what ifs' live in the back of a lawyers mind.").  "[D]isqualification should be based at least upon a standard of probability of a conflict developing rather than a mere possibility."  United States v. Trujillo, 302 F.Supp.2d at 1248 n.16 (emphasis in original).  None of the concerns that the United States raises move the potential for a conflict from a possibility to a probability.  Mendoza-Renteria might testify.  Ms. Johnson might know something from her past representation of Mendoza-Renteria that might be relevant to this case.  The only fact that the United States puts forward that Ms. Johnson might have knowledge of was whether Mendoza-Renteria was a citizen, but the United States did not offer any scenario in which Ms. Johnson might be able to use that fact in cross-examination or why that would be relevant to her defense of Bolivar.  See Tr. at 20:4-13 (Swainston).

At this time, "presumably each of these defendant's primary interest is avoiding conviction on the charges pending in his case, and there is no indication that in order to do so he must contravene that same interest on the part of any of the others."  United States v. Trujillo, 302 F.Supp.2d at 1252.  Judge Robreno has recognized that "there can be no doubt [an attorney's] loyalty would be divided between a current client and a former client because an attorney who cross-examines former clients inherently encounters divided loyalties."  United States v. Massimino, 832 F.Supp.2d at 515.  The Tenth Circuit has held, however, that there is "no per se rule prohibiting representation of the defendant by counsel who has previously represented a government witness in a related case."  United States v. Bowie, 892 F.2d at 1502.  Furthermore, the Court again notes that the United States has not established that Mendoza-Renteria will ever testify in this case.  Given

the Court's experience in many drug conspiracy cases and, more important, drug conspiracy trials, the chances are more likely that he will not testify. In United States v. Massimino, the defendant's attorney was confronted with the task of cross-examining a former client who was a government witness. See 832 F.Supp.2d at 515. Additionally, the defendant's attorney in United States v. Massimino faced a serious potential for conflict with a co-defendant because he had represented the co-defendant during pre-trial proceedings. See 832 F.Supp.2d at 517. Ms. Johnson's representation of Mendoza-Renteria took place three years ago and his prior alleged crimes are not related to the current criminal charges. The United States District Court for the District of Utah, when faced with similar circumstances, found that any conflict was "more hypothetical than real" where a defendant's attorney had previously represented a government witness and held that it would not disqualify the defendant's counsel of choice. See United States v. Penn, 151 F.Supp.2d 1322, 1325-26 (D.Utah 2001). The circumstances of that case were as follows:

> The representation terminated before this case was brought. The record is absent of any facts to show that the nature of Mr. Booker's prior representation of the witness involved receiving information that could have any bearing substantively or on the witness's credibility in this case. The two representations of the clients, witness and defendant, are unrelated.

United States v. Penn, 151 F.Supp.2d at 1325. The proposed conflict here is similarly hypothetical, and presents neither an actual nor a serious potential conflict.

The Model Rules of Professional Conduct similarly focus on the relationship between the case in which an attorney represented a former client and the current case. They provide: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Model Rules of Prof'l Conduct R. 1.9(a). A matter is substantially related if: "(1) [t]he current

matter involved the work the lawyer performed for the former client; or (2) [t]here is substantial risk that representation of the present client will involve the use of information acquired in the course of representing the former client, unless that information has been generally known." Restatement (Third) of the Law Governing Lawyers, § 132 cmt. e.  The United States District Court for the Eastern District of New York, applying this standard, has noted that "[l]imited representation of a government witness unrelated to representation of the defendant is not likely to present a disabling conflict." United States v. Pizzonia, 415 F.Supp.2d 168, 178 (E.D.N.Y. 2006).  The case before the Court is not related to the criminal charges in which Ms. Johnson represented Mendoza-Renteria. Additionally, the United States has not established that there is a substantial risk that Ms. Johnson's representation of Bolivar will involve the use of information she acquired during her representation of Mendoza-Renteria.  The United States could point to no specific scenarios in which Ms. Johnson's loyalties might be compromised, and raised only the possibility that Mendoza-Renteria might testify and Ms. Johnson might cross-examine him.  That scenario is unlikely, and even if it occurred, it does not appear that Ms. Johnson acquired any information from Mendoza-Renteria that she would use against him in favor of Bolivar.

The Court finds that there is no conflict present in this case, and any potential conflict is too speculative to support disqualifying Ms. Johnson.  While the United States and Mr. Prichard have made the Court probe the circumstances of Ms. Johnson's representation of Mendoza-Renteria, that investigation has not revealed anything that troubles the Court to the extent that the Court would set aside Bolivar's choice of counsel.  Accordingly, the Court will grant the Motion.

## II.   EVEN IF THERE IS A CONFLICT OF INTEREST, BOLIVAR AND MENDOZA–RENTERIA MAY WAIVE THE CONFLICT.

In their waivers, Bolivar and Mendoza-Renteria acknowledge Ms. Johnson's previous

representation of Mendoza-Renteria. See Bolivar Waiver ¶¶ 10-11, at 2; Mendoza-Renteria Waiver ¶¶ 11-14, at 2. The Court held a hearing, at which Mendoza-Renteria and Bolivar were both present, and confirmed that their attorneys had discussed the implications of the waiver with them. See June 20, 2012 Tr. at 4:6-21 (Court, Albertorio); June 20, 2012 Tr. at 9:9-22 (Johnson). Bolivar also stated that independent counsel, Mr. Davidson, had reviewed the Bolivar Waiver with him to make sure that he understood the rights that he is waiving. See June 20, 2012 Tr. at 25:18-25 (Johnson). The United States also indicated that waivers were sufficient to resolve this issue. See June 20, 2012 Tr. at 16:15-16 (Swainston).

The Tenth Circuit has indicated that, where a conflict is disclosed, a defendant can knowingly and intelligently waive his or her right to conflict-free counsel. See United States v. Hunt, 62 F.App'x at 277 ("Mr. Hunt's trial counsel disclosed the conflict and obtained a written waiver from Mr. Hunt . . . ."). The Court has determined that any potential conflict is hypothetical and unlikely to impact Ms. Johnson's representation, given that her past representation of Mendoza-Renteria was in an unrelated case. Moreover, Ms. Johnson has affirmatively asserted that she does not have privileged information regarding Mendoza-Renteria which she could use in her representation of Bolivar. See June 15, 2012 Tr. at 9:1-9 (Johnson). Although a district court has significant discretion to accept or refuse a waiver, see Wheat v. United States, 486 U.S. at 163, "disqualification of . . . counsel should be a measure of last resort," In re Grand Jury Proceedings, 859 F.2d at 1026. It is also worth noting that the United States has not moved to disqualify Ms. Johnson. The Court believes that, on balance, Bolivar's interest in obtaining his counsel of choice outweighs the dangers of a possible future conflict, and finds that Bolivar and Mendoza-Renteria may waive any potential conflict. Other courts have accepted waivers even when counsel possessed information "closely related to the events alleged in the indictment." United States v. Massimino,

832 F.Supp.2d at 518.  Additionally, courts have refused to disqualify counsel where "[t]here is no evidence . . . that defense counsel's representation or prior involvement with [a] Government witness would be detrimental to the witness or to [the] defendant . . . or that other interests would effect counsel's performance."  United States v. Penn, 151 F.Supp.2d at 1326.  Bolivar has been informed of the potential for conflict, see Bolivar Waiver at 1-2, and has determined that obtaining Ms. Johnson's services is worth the risk that a conflict might arise in the future.  He is entitled to make that choice.  See United States v. Pizzonia, 415 F.Supp.2d at 182 ("Defendant does possibly reduce the number of defense strategies by continuing to retain defense counsel. . . .  Nevertheless, he insists on asserting his Sixth Amendment right to counsel of his own choosing.").

Given that the Court has found that any potential for conflict is speculative, and that Ms. Johnson's previous representation and the current case are unrelated, the Court believes that waivers are appropriate, and that Mendoza-Renteria and Bolivar may waive any conflict that might be present.  Before the Court may accept Mendoza-Renteria's and Bolivar's waivers, however, the Court must conduct a colloquy with them to ensure that they understand the risks associated with entering these waivers.  The Court will conduct this hearing out of an abundance of caution, and because the Tenth Circuit requires a district court to investigate with each defendant whether their waiver is knowing and voluntary.  The Tenth Circuit has held that a trial court should "affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel."  United States v. Winkle, 722 F.2d at 611 (citations omitted).  A district court "should also determine whether the defendant understands the facts underlying the conflict and the dangers and risks associated with waiving the conflict."  United States v. Hunt, 62 F.App'x at 276.  Accordingly, the Court will hold a hearing on Tuesday,

July 24, 2012 at 10:00 a.m. to determine whether Mendoza-Renteria and Bolivar understand the rights they are waiving before the Court accepts the waiver.

**IT IS ORDERED** that the Motion for Substitution of Counsel and Memorandum in Support Thereof, filed May 29, 2012 (Doc. 182), is granted.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
United States Attorney
Reeve L. Swainston
Stephen R. Kotz
Cynthia L. Weisman
Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Troy W. Prichard
Albuquerque, New Mexico

*Attorney for Defendant Miguel Bolivar*

Erlinda O. Johnson
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

*Attorney for Defendant Miguel Bolivar*

Roberto Albertorio
Albuquerque, New Mexico

*Attorney for Defendant Eugenio Mendoza-Renteria*

Robert J. Gorence
Louren M. Oliveros
Gorence & Oliveros, PC
Albuquerque, New Mexico

*Attorneys for Defendant Homero Varela*

Cody Kelley
Kelley Law Offices
Albuquerque, New Mexico

-- and --

Joseph Sib. Abraham, Jr.
El Paso, Texas

-- and --

Petter J. Giovannini
Las Cruces, New Mexico

*Attorneys for Defendant Ramon Gonzalez, Sr.*

Paul J. Kennedy
Kennedy & Han
Albuquerque, New Mexico

*Attorneys for Defendant Ramon Gonzalez, Jr.*

Kimberly A. Middlebrooks
Albuquerque, New Mexico

*Attorney for Defendant Andres Gonzalez*

Jason Bowles
B.J. Crow
Monnica Lynn Garcia
Bowles and Crow
Albuquerque, New Mexico

*Attorneys for Defendant Steve Chavez*

Daniel R. Marlowe
Marlowe Law Firm, PC
Santa Fe, New Mexico

-- and --

Santiago Juarez
Albuquerque, New Mexico

*Attorneys for Defendant Jesus Ramos-Castillo*

Marc M. Lowry
Rothstein, Donatelli, Hughs, Dahlstrom & Schoenburg, LLP
Albuquerque, New Mexico

*Attorneys for Defendant Gabriel Guerra-Gonzalez*

Kirtan K. Khalsa
Khalsa Law Office
Albuquerque, New Mexico

*Attorneys for Defendant Antonio Munoz-Hernandez*

Robert R. Cooper
Albuquerque, New Mexico

*Attorney for Defendant Benito Castillo-Nava*

Charles E. Knoblauch
Albuquerque, New Mexico

*Attorney for Defendant Roy Madrid*

Gregory M. Acton
Albuquerque, New Mexico

*Attorney for Defendant Adalberto Valenzuela-Flores*